**RICHARD D. WILLIAMS (SBN 58640)**
rwilliams@williamslawfirmpc.com
**MINA HAKAKIAN (SBN 237666)**
mhakakian@williamslawfirmpc.com
**WILLIAMS LAW FIRM PC**
1539 Westwood Blvd., Second Floor
Los Angeles, California 90024
Tel.: (310) 982-2733; Fax: (310) 277-5952

Attorneys for Plaintiff,
**BRAND TARZANA SURGICAL INSTITUTE, INC.**

## UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| **BRAND TARZANA SURGICAL INSTITUTE, INC.,** a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**UNITED HEALTHCARE SERVICES, INC.; UNITED HEALTHCARE INSURANCE COMPANY,** and **DOES 1 THROUGH 100,**<br><br>Defendants. | Case No.: 2:22-cv-3669<br><br><br><br>**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)** |

Plaintiff, Brand Tarzana Surgical Institute, Inc. ("Brand" or "Plaintiff") alleges as follows:

## I.   JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under the laws of the United States, and pursuant to 29 U.S.C. § 1132 (e)(1) because the action seeks to enforce rights under the Employee Retirement Income Security Act ("ERISA").

2.     This Court is the proper venue for the action pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this Judicial District, and pursuant to 29 U.S.C. § 1132 (e)(2) because Defendants conduct a substantial amount of business in this Judicial District.

## II.   THE PARTIES

### A. The Plaintiff

3.     Brand is a California corporation located and doing business in the County of Los Angeles, State of California.

4.     Brand does business through and by way of a surgery center located in Tarzana, California.  The surgery center operated by Brand maintains state of the art medical technology devices and other high-quality equipment necessary to carry out specialized surgical procedures for medical patients.  The types of procedures performed at the Brand facility include foot and ankle surgery, back surgery, ear, nose and throat surgery, septoplasty and related nasal surgeries, colonoscopies, endoscopies, gastrointestinal surgery, and general surgery.  Brand provides facility usage and related surgical services on behalf of a wide variety of individual patients, many of whom were insured under the terms of group health insurance plans that are

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

governed by ERISA.

### B. The Defendants

5.    Plaintiff is informed and believes Defendants United Healthcare Services, Inc., and United Healthcare Insurance Company (sometimes hereinafter jointly "United" and/or the "United entities") collectively and with their related companies constitute one of the largest health insurance entities in the United States.

6.    Plaintiff is informed and believes that Defendant United Healthcare Services, Inc. ("United Healthcare") is a Minnesota corporation with its corporate headquarters located in Minneapolis, Minnesota, and that this entity acts as an insurance operating entity within the United family of companies.  Plaintiff is informed and believes that this entity is licensed to conduct, and does conduct, insurance operations in California and other states, whether it be under the name United Healthcare or some other operating name.

7.    Plaintiff is informed and believes that Defendant United Healthcare Insurance Company ("UHC") is a Minnesota corporation with its corporate headquarters in Minneapolis, Minnesota, and that this entity acts as an insurance underwriting entity within the United family companies.  Plaintiff is informed and believes that this entity is licensed to conduct, and does conduct, insurance underwriting in California and other states, whether it be under the name UHC or some other insurance underwriting entity name.

8.    Plaintiff is informed and believes that United provides multiple services and functions in the realm of health insurance including: (1) underwriting its own health insurance plans for individuals and families; (2) providing services as an administrator of ERISA health insurance plans on behalf of employers and other entities (hereafter referred to as "ERISA Plans" or a "Plan" or "Plans"); and (3) serving as the insurance underwriter of ERISA Plans which offer health insurance

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

benefits to employees and/or members and their families.  Brand is informed and believes that in each of these functions and capacities United acted as the entity with discretion and actual control to administer, decide and pay healthcare benefit claims from insured members and healthcare service providers based on United's own coverage determinations and United's application of claims handling policies and procedures.

9.     Brand is informed and believes that United performs its claims handling services for a multitude of ERISA Plans, some of which are self-funded, and some of which are funded by United acting in its capacity as the insurance underwriter for the Plan.  Whether the Plan is self-funded or fully insured, Plaintiff is informed and believes that United provides plan members with plan documents, interprets and purports to apply the plan terms, makes coverage and benefits determinations, handles the appeals of coverage and benefits decisions, and makes payment to medical providers for services rendered in amounts as determined by United.

10.     Brand is informed and believes that it is United's responsibility as the claims administrator and/or underwriter for each of all of the ERISA Plans involved in this case (17 Plans in total) to decide which healthcare benefits claims will be paid under the Plan; and which benefits claims will not be paid - - and thereafter to pay benefits to claimants such Brand directly out of ERISA Plans assets that are within United's unfettered control in the ordinary course of business.  In simple terms, Brand alleges on information and belief that United had the responsibility and actual control to make benefits determinations for the healthcare services claims at issue in this case.

### C. The Doe Defendants

11.     The true names and capacities of the Defendants sued herein as DOES are unknown to Plaintiff at this time, and Plaintiff therefore sues such Defendants by fictitious names.  Plaintiff is informed and believes that the DOES are those

– 4 –

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

individuals, corporations and/or businesses or other entities that are also in some fashion legally responsible for the actions, events and circumstances complained of herein, and may be financially responsible to Plaintiff for services, as alleged herein. The Complaint will be amended to allege the DOES' true status and capacities when they have been ascertained.

## III.   THE PATIENTS AND THEIR ERISA PLANS

12.   The twenty patients for whom surgical services were provided by Brand in this case are designated by initials herein as Patients YUS-VAL; KRO-BRI; LAN-JAM; ALL-MIC; JUS-LEV; COL-CAR; GON-SAL; HAY-ERI; GUT-MIC; ROS-ADA; BOU-ARM; CHA-MIC; ENI-SAN; ROS-MAR; SAN-FRA; HYN-OLI; PET-BEN; CUT-TAY; FAI-BEI; MIC-FOR (collectively the "Patients") for privacy.  A summary listing of the Patients, with amounts billed and paid (whether partial payment or zero payment) by United is attached hereto as Exhibit A with the Patient names and identifiers redacted for privacy.[1]

13.   Each of the Patients was or is a member or beneficiary of an ERISA Plan which has either been administered and/or underwritten by United.  The Patients and their participating plans are as follows:

---

[1]   The names and any identifying information about the insured patients are not set forth in this Complaint to preserve and protect the patient privacy.  Plaintiff will make the identifying information available to Defendants pursuant to an appropriate protective order and will request that patient information also be subject to appropriate protection during the litigation proceeding in this Court.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

| PATIENTS | PARTICIPATING PLANS |
|---|---|
| A. PATIENT YUS-VAL | Insperity Holdings, Inc. |
| B. PATIENT KRO-BRI | Estee Lauder Company (Custom Care Medical Plan) |
| C. PATIENT LAN-JAM | Harvard Pilgrim Healthcare |
| D. PATIENT ALL-MIC | Allegretti And Company |
| E. PATIENT JUS-LEV | TriNet HR IV, LLC. |
| F. PATIENT COL-CAR | Pollen Inc. |
| G. PATENT GON-SAL | CSM HWTF |
| H. PATEINT HAY-ERI | House Spirits Distillery |
| I.  PATIENT GUT-MIC | Eaton Corporation |
| J.  PATEINT ROS-ADA | Apple Inc. |
| K. PATIENT BOU-ARM | UL Everclean |
| L. PATIENT CHA-MIC | Global IP USA, Inc. |
| M. PATIENT ENI-SAN | Insperity Holdings, Inc. |
| N. PATIENT ROS-MAR | Eaton Corporation |
| O. PATIENT SAN-FRA | CACI International Inc. |
| P. PATIENT HYN-OLI | Grace Church and School |
| Q. PATIENT PET-BEN | Eaton Corporation |
| R. PATIENT CUT-TAY | Belkin |
| S. PATIENT FAI-BEI | Bank of America |
| T. PATIENT MIC-FOR | Paysafe |

14.    In each claim circumstance, and prior to receiving services at Brand, each Patient signed an agreement assigning his or her ERISA Plan rights and benefits to Brand in their entirety.  Each such assignment of benefits provided for Brand to be paid directly for the services provided to the patient, and Brand has received a written

assignment of benefits in connection with every outstanding benefit claim event at issue in this action. An exemplar of the form of assignment document utilized by Brand in connection with the claims as issue in this case is attached hereto as Exhibit B.

15.     Brand does not bring this suit against the ERISA plans for whom United acted as administer or insurer in connection with Brand's claims in this action. Plaintiff is informed and believes that United, and not the ERISA plans themselves, exercised actual control over the determination and payment of the benefits claims submitted by Brand.  Plaintiff is informed and believes that United acted as the primary point of contact for members and providers to communicate regarding all aspects of benefits and benefit determination. Plaintiff is informed and believes that United Healthcare and UHC are the responsible parties for administering and interpreting the ERISA Plans at issue in this case and are the entities solely responsible for the underpayment and nonpayment of the benefits.  These parties, therefore, are the proper party defendants in this case.

16.     In the event that any of the listed healthcare plans are not subject to ERISA, Brand contends and asserts that the doctrine of supplemental jurisdiction applies with respect to the claims involving such non-ERISA plans.

## IV.   CORE FACTS UNDERLYING THE BRAND CLAIMS FOR PAYMENT

17.     Brand provided healthcare services at is surgery center in Tarzana, California from July 2017 to January 2021 on numerous occasions for the ERISA Plan members and their dependents where the subject ERISA Plan was either administered and/or underwritten by United Healthcare or UHC.  For some Plan members and dependents Brand has provided healthcare services on more than one occasion.  In total, Brand has performed forty-four (44) healthcare services events for twenty (20) Plan members and/or dependents which are the subject of this lawsuit as identified in

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

Exhibit A.

18.     When Plan members and/or their dependents came to Brand for medical services they would present medical insurance cards in the name of a United entity, and the relevant insurance contact information on each medical insurance card would direct Brand to the relevant United office location and telephone number. The ID card presented by the members also identified the Plan and would designate the United entity either as the administrator and/or the underwriter of the Plan. A true and correct copy of an exemplar patient insurance card is attached hereto as Exhibit C.

19.     For each claim event at issue in this case, Brand's custom and practice was to contact the United entity by telephone for benefit eligibility confirmation and member coverage verification prior to performing any healthcare services. The regular practice was that Brand and a representative of the United entity would discuss the proposed surgery event by telephone in advance of the services being performed, and in each such telephone communication the United representative advised Brand that coverage existed for the patient and that benefits were properly payable to Brand as an out-of-network provider.  The following sets forth in summary form the substance of the telephonic communications between Brand and the United entity representative which occurred prior to services being performed in connection with the claims that are the subject of this lawsuit:

(a)     For each claim event, Brand would call the United entity number identified on the member identification card presented by the patient.

(b)     The answering party would identify himself or herself as a representative of a United entity, thereby confirming to Brand that the communication was with an authorized claims administrator and/or underwriter for the ERISA Plan.

(c)     In each claim call, the Brand representative advised the United entity

– 8 –

representative of the identity of the Plan member or dependent; the CPT[2] code or codes for the surgical procedures to be performed and tasks and that the purpose of the call was to verify the existence of coverage for the Patient and the eligibility of Brand for payment of benefits as an out-of-network provider.

(d)     The United entity representative responded by advising Brand about a percentage which supposedly would be paid for out-of-network billing amounts covered under the Plan; the amount of patient deductible; and whether benefits would in fact be payable to Brand based on the CPT codes provided.  The United entity representative would also advise Brand whether specific pre-authorization for the proposed surgical procedure was required.

20.     Below is a summary of the percentage of coverage verified for each procedure by the United entity representatives in the verification calls prior to the services being performed:

---

2     CPT Code is the medical procedure descriptive identifier - - CPT means "Current Procedural Terminology". The CPT Code is a medical code maintained by the American Medical Association through the CPT Editorial Panel.  The CPT code set describes medical, surgical, and diagnostic services and is designed to communicate uniform information about medical services and procedures among physicians, coders, patient accreditation organizations, and payors for administrative, financial, and analytical purposes.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

| PATIENTS | PERCENTAGE OF COVERAGE |
|---|---|
| A. PATIENT YUS-VAL | 110% MNRP[3] |
| B. PATIENT KRO-BRI | 90% (Plaintiff believes this reference is to Reasonable and Customary) |
| C. PATIENT LAN-JAM | 150% MNRP |
| D. PATIENT ALL-MIC | 110% MNRP |
| E. PATIENT JUS-LEV | 70% Reasonable and Customary |
| F. PATIENT COL-CAR | 110% MNRP |
| G. PATENT GON-SAL | 110% MNRP |
| H. PATEINT HAY-ERI | 110% MNRP |
| I. PATIENT GUT-MIC | 140% MNRP |
| J. PATEINT ROS-ADA | 80% Reasonable and Customary |
| K. PATIENT BOU-ARM | 140% MNRP |
| L. PATIENT CHA-MIC | 110% MNRP |
| M. PATIENT ENI-SAN | 110% MNRP |
| N. PATIENT ROS-MAR | 140% MNRP |
| O. PATIENT SAN-FRA | 110% MNRP |
| P. PATIENT HYN-OLI | 110% MNRP |
| Q. PATIENT PET-BEN | 140% MNRP |
| R. PATIENT CUT-TAY | 110% MNRP |
| S. PATIENT FAI-BEI | 60% to 80% Reasonable and Customary |
| T. PATIENT MIC-FOR | 110% MNRP |

---

[3]     MNRP stands for "Maximum Non-Network Reimbursement Program".   This Program is discussed in detail later in this Complaint in Sections VII – IX.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

1  An exemplar copy of Brand's verification is attached hereto as Exhibit D.

2       21.    In each telephone verification call, Brand also inquired as to whether a

3  pre-authorization was required.  In cases where Brand was advised that pre-

4  authorization was required, Brand received pre-authorization prior to performing the

5  services.

6       22.    Brand relied and reasonably relied on the United entity representative

7  telephonic representations with respect to Patients at issue in this case by providing

8  surgery services in response to the United affirmation that Brand was eligible to

9  receive benefits.  But for the advance representations of the United entity

10  representatives in setting out Brand's eligibility for benefits, Brand would not have

11  provided or continued to provide surgery services to the Patients.

12  **V.    BRAND'S BILLINGS SUBMITTED TO THE UNITED ENTITIES**

13  **PROVIDED ALL NECESSARY INFORMATION TO SUPPORT CLAIM**

14  **PAYMENT**

15       23.    After the United entity representatives had verified that the specified

16  treatment was covered and that Brand was eligible for payment of ERISA Plan

17  benefits, Brand  provided facility services for the surgery events for which verification

18  was obtained.

19       24.    In connection with each of the claims where services were provided,

20  Brand has billed a United entity for services rendered to ERISA Plan members and

21  their dependents.  The Brand billings were submitted on a standard UB04 form which

22  identified the name, and address of the provider; the patient name, patient address, sex

23  and ID number; the date of service, the CPT Code and the nature of the services

24  rendered.  Each of Plaintiff's claim billing forms set forth all the requisite information

25  in standard terminology with sufficient detail to enable the United entity to consider

26  and pay the claim in the ordinary course of business.  An exemplar of the Brand claim

27  – 11 –

28  **COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND
REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

form submitted with the patient's name and identifier redacted for privacy is attached hereto as Exhibit E.

25.     On each billing form submitted by Brand, Brand also marked a "Y" in box 53, which affirmed that Brand was asserting its claim for payment pursuant to a patient assignment of benefits.

26.     The charges for healthcare services submitted by Brand to the United entities were in all instances usual, customary and reasonable and in accord with Brand's charges to non-Medicare patients insured by entities other than the subject plans in this case.  Brand's charges for services submitted to the United entities were also in accordance with the charges of other medical service providers in the community who provided healthcare services that might be considered comparable to those provided by Brand. The United entities have abused their discretion and acted in an arbitrary and capricious manner by failing and refusing to honor and pay Brand's claims in accordance with ERISA requirements, practices and provisions and Brand has suffered resulting damages in an amount to be proven at trial.[4]

27.     In connection with every claim form submitted, Brand has received an Explanation of Benefits ("EOB") document from a United entity and in each instance, Brand has received partial payments from the United entities for the services rendered in this action, except for three claims which were completely denied. An exemplar of an EOB document received by Brand from a United entity is attached hereto as Exhibit F.

---

[4]     As is discussed later in this Complaint in Section VII, the applicable legal standard for review of the United claims handling practices and payment amounts is de novo review.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

## VI.   BRAND HAS STANDING TO PURSUE CLAIMS AGAINST UNITED UNDER ERISA FOR PAYMENT OF BENEFITS AND ATTORNEY'S FEES

28.    ERISA governs all aspects of health and medical benefits under ERISA plans, and authorizes a civil action to recover unpaid benefits and attorney's fees. Brand has standing to bring this lawsuit arising from its Assignments from patients.

29.    The United entities in this action are the proper party defendants for an ERISA benefits recovery action. *See, Harris Trust & Sav. Bank v. Salomon, Smith Barney, Inc.,* 530 U.S. 238, 247 (2000); *Cyr v. Reliance Standard Life Ins. Co.,* 647 F.3d 1202 (9th Cir. 2011).

## VII.   THE UNITED ENTITIES DO NOT HAVE ANY LEGITIMATE BASIS TO APPLY MEDICARE RATES IN THE GUISE OF MNRP TO BRAND'S CLAIMS FOR BENEFITS

30.    Brand is informed and believes that for most of the claims in this case United purported to employ Medicare-based reimbursement standards and systems to price the Brand claims premised upon the program designated by the United entities as MNRP.  Historically, MNRP has been utilized primarily for Retiree ERISA Plans as a device to lower the expense of Medicare-age members, in a manner much like Medicare itself.  United is of course aware that Medicare insurance plans are for people 65 or older - - or for those who may qualify for Medicare because of a disability or a special condition.

31.    Neither Medicare nor a typical MNRP Retiree program was designed to create a maximum allowable reimbursement amount for out-of-network healthcare services in a circumstance where many or nearly all of the Patients being serviced were younger in age than 65, or were Patients that were free of the disabilities and conditions that Medicare and MNRP were designed to address.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

32.     Medicare constitutes the largest <u>contracted</u> healthcare payor in America. Any provider wishing to participate in the Medicare payment program is required to sign a contract agreeing to accept Medicare rates for services rendered to Medicare beneficiaries.  For qualified Patients seeking Medicare benefits, Medicare reimbursement rates are applied across all medically approved procedures and services provided to Medicare enrollees.

33.     Medicare reimbursement rates have no reasonable or logical application in the context of private sector commercial healthcare plans. It is important to keep in mind that Medicare rates are set unilaterally by the Federal Government and are not subject to "free market" healthcare services practices and principles.  As a result of this one-sided rate setting process, the Medicare insurance program significantly discounts the allowed payments to Medicare-controlled providers in order to meet the government's plans and projections for their annual Medicare budget.  The purpose of these government-controlled rates is to limit health care providers in the payments they will receive <u>for Medicare patients</u>, who are typically elderly and/or disabled individuals.  <u>While Medicare may take into consideration a number of economic factors in setting its discounted provider rates, the free market charge made by a service provider and submitted to commercial insurance companies on the basis of open competition in a particular marketplace is not a considered factor</u>.  The Medicare budget is based on government projected income and expense, and Medicare payments to healthcare providers have traditionally been significantly lower than payments from the private sector commercial health insurers that are engaged in free market competition for the services of the healthcare provider.  A mixing of Medicare rates in private sector health insurance plans is an inappropriate blending of apples and oranges.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

34.     When a healthcare provider has a written contract with Medicare to accept Medicare rates (lower rates than the provider's typical billed amount) the provider will have agreed to receive a reimbursement for its services at a discounted rate, but at the same time, the provider will receive the benefit of being a participating provider in the Medicare network itself.  This benefit will typically include an increased volume of business for the provider from Medicare patients.  By contrast, out-of-network providers doing business with free market commercial insurers such as the United entities will not have any basis to expect to receive an increase in volume of patients from United even if the provider is accepting a discounted rate.

35.     Plaintiff is informed and believes that United has attempted to implement MNRP reimbursement terminology in its ERISA Plan as a ruse and a hoax to artificially reduce out-of-network provider rates by purporting to make them functionally equivalent to discounted Medicare rates.  This ruse has the effect of placing economic pressure on out-of-network providers to join United's in-network group of providers and to accept reduced rates as part of their contract in-network.  At the same time United has historically marketed itself and its ERISA Plans to members as Plans which provided members and beneficiaries with the freedom and flexibility to utilize a healthcare provider of their own choosing, including out-of-network providers.  These Plans charge members a higher premium or contribution in exchange for their purported freedom of choice where in reality none exists.  Medicare rates have no legitimate purpose or function in out-of-network free market ERISA Plans.[5]

---

[5]     In recent times, United has engaged in an effort to shift away from including out-of-network providers from any participation in its administered or underwritten ERISA Plans.  This shift is United's latest effort in its longstanding attempt to execute

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND
REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

## VIII. <u>IN ANY EVENT, UNITED'S PAYMENTS TO BRAND IN THIS CASE DID NOT ACTUALLY IMPLEMENT OR UTILIZE MEDICARE RATES IN SETTING AND PAYING THE REIMBURSEMENTS ON THE BRAND BILLS</u>

36.     For seventeen (17) of the healthcare plans in this case United applied a payment formulation for out-of-network providers that it designated as MNRP.  As set forth hereinabove in this Complaint, the United entities purported and/or promised to pay Brand's claims on the basis of 110% to 150% of MNRP for 13 of these Plans. For the remaining four healthcare plans, United purported and/or promised to pay the Brand claims on the basis of "Reasonable and Customary" ("R&C") fee amounts, with payment rates ranging from 60%-90% of R&C.  <u>However, in each and every instance, the United entities in fact failed to pay Brand's claims in accordance with Plan terms and conditions, and instead provided payment in accordance with some unknown and unknowable payment methodology of United's own choosing.</u>  The United's entity payments to Brand were entirely arbitrary, and capricious and mysterious - - Brand is informed and believes that United itself ignored both "Medicare Rates" and "R & C" amounts as their basis for payment.

---

an inappropriate clamp-down on out-of-network provider reimbursements.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

**A.** **Any Assertion by United of "Discretion" to Determine the Reimbursement Rates to be Paid to Brand Is Void and Unenforceable Under Applicable Law**

37.     United may seek to argue that it has a contract right to assert "discretion" in deciding provider payment amounts. Brand is informed and believes that the ERISA Plans underwritten or serviced by United typically included contract language which purports to grant total and unfettered discretion to United to make the healthcare claim payment determinations to an out-of-network provider such as Brand.  These sorts of contract clauses usually state that United has broad discretion to decide whether the claimant is eligible to receive Plan benefits, to decide the amount, if any, of benefits to which they are entitled, to interpret the Plan terms in a manner that United deems proper - - or other words to similar effect.

38.     In the past, such discretionary clauses were given effect in the federal courts, and a court reviewing the payment determination was required to give deference to whatever it was that the insurer decided.  This usually found its way into a legal formulation which stated the applicable legal review standard as "arbitrary and capricious" rather than "de novo".

39.     Not so any more.  The California legislature put an end to such discretionary pro-insurer provisions by enacting California Insurance Code section 10110.6 which voided and made unenforceable any such discretionary clauses in California welfare plans.  Numerous other states have adopted similar legislative enactments.

40.     Insurers in the past argued that their discretionary clauses preempted California law on this issue, and sought on this basis to maintain their unfettered power to impose "discretionary" claim payment methodologies court cases in the federal courts.  But to no avail.  On May 11, 2017, the Ninth Circuit in *Orzechowski v.*

– 17 –

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

*Boeing Co. Non-Union Long Term Disability Plan,* 856 F.3d 686 (9th Cir. 2017) held that ERISA did not preempt application of section 10110.6.  Discretionary clauses were found to be void and unenforceable - - such clauses are of no effect irrespective of whether the clause appears in the ERISA Plan itself or in insurer documents that purport to establish discretion in the insurer's guidelines or claim handling policies.

41.    For its MNRP payments in the present action, United asserted in its EOB documents that payments of benefits were being made to Brand "in accordance with the terms of the managed care system."  This vague and non-specific terminology provided no guidance to Brand as the provider as to how, and in what manner, United computed its claim payment amount, and is entirely insufficient to comply with ERISA regulatory requirements governing notification of adverse benefits determinations.  The following notifications with respect to three instances of adverse benefits code language was also provided in EOB documents provided to Brand by the United entities as United's explanation of the claim payment amounts for Codes ND, NE and CY.

**Code ND:** This out-of-network service was paid based on Medicare allowed amount or other sources if no Medicare is available.  These amounts are used even if the patient does not have Medicare.

**Code NE:** This out-of-network service was paid on Medicare allowed amount or other sources if no Medicare amount is available.  If no amount is available, the allowed amount is a percentage of what the provider billed.

**Code CY:** This payment has been reduced by the amount that is above the eligible expense amount for out-of-network services under your Plan in your area.  If you are billed for an amount above the eligible amount, please call Viant direct at 1-800-598-6888.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

42.     A statement in the EOB for Codes ND and NE that payment for Brand's out-of-network service was paid based upon "Medicare allowed amounts or other sources if no Medicare is available" tells the provider nothing.  The EOB is stated as an "either/or" conjunctive, and does not state whether some form of Medicare computation methodology was actually utilized or not.  As to Code CY, the EOB statement that the payment has been reduced "by the amount that is above the eligible expense amount for out-of-network services under your Plan in your area" is entirely meaningless.  What is the amount of reduction?  Reduction from what amount?  What is the "eligible expense amount"?  These sorts of obvious questions are unanswered by United for Code CY.  Instead, United issues a cryptic and irrelevant directive that the provider should call "Viant" (United's outside billing review entity) if the provider has been billed "for an amount above the eligible amount."  This directive is a road to nowhere, since the United entities provide no notification of the methodology that might explain how the "eligible expense amount" was computed by the United entities (or Viant) in the first instance.  The United entity explanations of Codes ND, NE, and CY are nothing more than an indecipherable word salad.

43.     In any event, and to the extent that the United entities did in fact undertake to use "Medicare allowed amounts" as their grounding for Brand payments, this effort is entirely improper and illegitimate.  A private sector MNRP payment for out-of-network provider services which purports to rely upon Medicare rates as its framework for reimbursement would allow for an inappropriate skewing of reimbursement amounts to the detriment of healthcare providers (and the benefit of insurance plans and insurers) by imposing artificially low payment amounts that are properly usable only in the context of elderly and/or disabled Medicare patients.  Medicare, by law, imposes these artificially low rates to fulfill a governmental purpose of arbitrarily limiting and capping the reimbursements to providers who have

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

1   agreed to the Medicare reimbursement structure.  No similar capping structure

2   agreement exists in a private sector arrangement between an insured healthcare plan

3   and the out-of-network providers who service the plan members.  Nor is there any

4   government social benefit or economic justification which would allow private sector

5   insurance plans to piggyback on government-discounted Medicare rates.  These

6   discounted rates are not suited for healthcare plan "for profit" insurers such as United

7   which do not perform any sort of governmental service for the benefit of elderly

8   and/or disabled plan members.  Medicare-based pricing of services by the United in

9   private healthcare plans is simply a contrived effort by the private insurers to increase

10  their own profits at the expenses of the out-of-network service providers.

11     **B.**    <u>**United Is Well Aware That An Attempt to Artificially Drive Down**</u>

12            <u>**Provider MNRP Rates Based On Skewed Data Is Improper**</u>

13     44.    In or about 2009, United was subjected to a wide-ranging investigation

14  by New York Attorney General Andrew Cuomo which resulted in a major reform in

15  the manner that United carried out its reimbursement for out-of-network healthcare

16  provider charges.  The investigation uncovered that a wholly owned subsidiary of

17  United known as Ingenix maintained a claim payment database which intentionally

18  skewed out-of-network provider reasonable and customary billing rates downward

19  through faulty data collection, poor pooling procedures, and a lack of audits.

20  Healthcare consumers were forced to pay more than they should have as a result of the

21  United/Ingenix practice of underpaying the out-of-network providers.  The

22  investigation found that Ingenix had a vested interest in helping to set the provider

23  reimbursement rates at an artificially low level - - and United itself benefited as a

24  result of the lower reimbursements paid to providers.

25     45.    On January 13, 2009, United agreed to shut down its Ingenix database

26  and finance the construction of a new and independent database which ultimately

27     **– 20 –**

28  **COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND**
       **REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

became known as Fair Health.

46.    Plaintiff is informed and believes that Fair Health was created as a part of a settlement of the investigation of health insurance companies' reimbursement practices arising from consumer complaints that insurers such as United were misrepresenting usual and customary charges for services based on a data base created by Ingenix (now renamed as Optum), a wholly-owned subsidiary of United Health Group.  Fair Health was set up to create a fair, independent, and transparent database for use in determining out-of-network payments to providers.

47.    United also paid $350 million in settlement of class action litigation arising out of the United/Ingenix database manipulation.

48.    Plaintiff is informed and believes that MNRP is also used by United as a disguise for a formulation known as "Webstrat".  Webstrat is a browser-based application hosted and programed by Optum that delivers tools to help payors reimburse providers using the prospective payment methodology.  Plaintiff is informed and believes that while United gave the impression that it would utilize Fair Health after the Ingenix settlement was consummated, United used Webstrat or some similar reimbursement methodology (either in MNRP Plans or separate) as an ongoing grounding for their improper reimbursement.

49.    United obviously knows about this troubled history.  Brand believes that is why the payment formulation in the United entity healthcare plans at issue in this case is disguised, and is described in meaningless words such as "Maximum Non-Network Reimbursement Payment" rather that set forth in straightforward terms such as "Medicare Payment Plan".  The United entities surely understand very well that a "Medicare Payment Plan" would be immediately recognized in the healthcare insurance free market community as an inferior insurance offering as compared to a plan that reimburses patients and/or providers on the basis of provider "reasonable and

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

1   customary" payment rates.

2       50.   United has been trying for many years to change over from reasonable

3   and customary payment rates to Medicare.  The MNRP formulation is only the most

4   recent of their several approaches - - none of which are proper.  Whether it be an

5   attempt to force all out-of-network providers into controlled insurer healthcare

6   networks; or the misrepresentation and skewing of usual and customary rate setting

7   methodologies; or the most recent and blatant effort to substitute Medicare rates for

8   usual and customary rates under the subterfuge of MNRP, United's long history of

9   attack against out-of-network providers is there for all to see.

10  ## IX.   UNITED HAS WAIVED AND/OR IS ESTOPPED FROM ASSERTING

11  ## MEDICARE RATES OR UNITED'S OWN DISCRETION AS A BASIS

12  ## FOR ITS CALCULATION OF THE PAYMENTS TO BRAND

13      51.   For every claim at issue in this case, it was Brand's custom and practice

14  to contact United by telephone for benefit eligibility confirmation and member

15  coverage verification prior to performing any healthcare services.  During the

16  verification calls, in seventeen instances Brand was notified that coverage was 110%

17  to 150% MNRP and in four instances Brand was notified that coverage existed at 70%

18  to 90% Reasonable and Customary.

19      52.   After the services were provided, Plaintiff timely submitted billing claim

20  forms to United.  Brand's bills were premised on reasonable and customary charges.

21      53.   After the claim submittals to United, for each claim event in this action,

22  United followed a practice of administrative review whereby it would provide an EOB

23  document which was supposed to explain the underpayments/nonpayment applied

24  with respect to Plaintiff's billing submittals.  However, each of these written EOB

25  documents was woefully deficient in its explanation of the purported grounding

26  asserted by United for the underpayments/denial applied with respect to Plaintiff's

27        – 22 –

28  **COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND**
**REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

bills.  *See* discussion earlier in this Complaint at Sections VIII and IX.

54.     When making a claim determination under ERISA "an administrator may not hold in reserve a known or reasonably knowable reason for denying a claim and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex Physical Therapy USA, Inc. v. United Healthcare of Ariz., Inc.,* 770 F.3d 1282, 1296 (9th Cir. 2014) ("*Spinedex*"); *Harlick v. Blue Shield of Cal.,* 686 F.3d 699, 719 (9th Cir. 2012) ("*Harlick*") "A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court[.]"; *Beverly Oaks Physicians Surgical Center, LLC v. Blue Cross and Blue Shield of Illinois,* 953 F.3d 435 (9th Cir. 2020) ("*Beverly Oaks*").

55.     In the absence of proper benefits denials in the claim administrative process, United has waived and is estopped from asserting employing Medicare pricing or United discretion as a litigation basis for denial of Brand's claims.  United's EOB documents submitted pre-litigation failed to give discernable reasons based on Medicare, United "discretion", or any other recognizable grounding for their adverse benefits determinations.

56.     In cases where United verified MNRP Medicare pricing at the verification stage, Brand is informed and believes that United subsequently failed to actually employ Medicare calculation methodology in later payment of the claims.  In all instances, Brand has been paid at a rate lower than Medicare and there is no evidence that United actually employed a percentage of Medicare as its calculation method for payment of Brand's claims.  United has thereby waived the right to employ an MNRP calculation based on Medicare to Brand's claims in this litigation action.

57.     Brand is informed and believes that United paid nearly every Brand

– 23 –
**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

claim without the application of MNRP at all. United's payments employing some indecipherable methodology other than MNRP are inconsistent with the verification calls, and United's stated intent to use Medicare as a methodology calculation and, United is now estopped from asserting the right, to assert Medicare rates after this lawsuit has been filed.

58.    In those instances where United verified eligibility at 70% to 90% of Reasonable and Customary, United is also estopped from employing Medicare or "discretion" as a basis for claims determination. For these claims it would be false and misleading in the extreme for United to verify coverage at 70% to 90% of Reasonable and Customary to Plaintiff, while at the same time failing to disclose to Plaintiff that United intended to assert a Medicare percentage (or some other undisclosed methodology) for its calculation of the Allowed Amount. The promise that Brand was eligible to receive plan benefits as an out-of-network healthcare provider at reasonable and customary is sufficient to estop United from asserting Medicare rates or "discretion" to price the Brand claims.

## X.   THE WAIVER AND ESTOPPEL IN THIS ACTION IS ILLUSTRATED BY THE SUMMARY PLAN DESCRIPTION FOR HEALTH AND INSURANCE BENEFITS ISSUED TO EATON EMPLOYEES

59.    The Eaton Plan applies to patients GUT-MIC, ROS-MAR, and PET-BEN, serviced by Brand in this action, and provides an exemplar for the applicable reimbursement policy.

60.    The Eaton Plan states the following with respect to United's determination of benefits applicable to the Eaton Plan Patients:

Review and Determine Benefits In Accordance With United Healthcare Reimbursement Policies

United Healthcare develops its reimbursement policy guidelines in its sole

– 24 –
COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND
REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)

discretion, in accordance with one or more of the following methodologies:

- As indicated in the most recent edition of the Current Procedural Terminology (CPT), a publication of the American Medical Association, and/or the *Centers for Medicare and Medicaid Services (CMS).*

- As reported by generally recognized professionals or publications.

- As used for Medicare

- As determined by medical staff and outside medical consultants pursuant to other appropriate sources or determinations that United Healthcare accepts.

61.     On review of the EOBs in this action, it becomes apparent that United did not actually use Medicare rates at all in their computation of Brand's payment under the Eaton Plan.

62.     United may believe it can apply its "Reimbursement Policies" in its own discretion to determine the amount to be paid on healthcare provider billings, even though any such "guidelines" are unknown and unknowable to the provider. However, as discussed earlier in this Complaint, the use of such unfettered "discretion" by a healthcare claim administrator is in violation of applicable California law, and is void.

63.     The net result of United's conduct is a waiver by United of Medicare rates under the Eaton Plan, and estoppel to assert a "discretionary" rate formulation on the Brand bills.  This leaves the Eaton Plan "usual and customary" language (reimbursement to the provider "as reported by generally recognized professionals or publications") as the proper basis for payment due under the Plan.

///

///

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

## XI.    BRAND HAS EXHAUSTED ALL ADMINSTRATIVE REMEDIES

64.    For the claim events in this action, United provided EOB documents which purported to explain the payment reductions and/or denials applied with respect to Brand billing submittals.  The EOBs set forth groundings for United's claim payment reductions.  However, the EOBs were woefully deficient in their explanation of the purported grounding for the reduction and/or non-payment of Brand's bills.  The groundings did not provide any explanation or basis for reduction at all; and accordingly, the EOBs did not constitute a final determination with respect to the payment of Brand's bills.

65.    Brand has appealed some of the billing reductions and/or denials asserted in connection with the claims in this case, yet the appeals have been futile and have not resulted in any further payment from United.  However, and irrespective of the appeals being submitted, United in their EOBs has violated the applicable claims procedure regulations governing ERISA plans as set forth in 29 C.F.R. section 2560.503-1 (b).  Of particular significance in this case are the regulations dealing with "Manner and Content of Notification of Benefit Determination" set forth in 29 C.F.R. section 2560.503-1 (g)(1).  That section requires that the plan administrator shall provide a claimant with a written or electronic notification of any adverse benefit determination.  The regulations require the following:

"The notification shall set forth, in a manner calculated to be understood by the claimant - -

    i.    The specific reason or reasons for the adverse determination;

    ii.    Reference to the specific plan provisions on which the determination is based;

    iii.    A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why

– 26 –

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

such material or information is necessary;

iv.   A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review."

66.   These notification requirements were not met by the EOBs in the present action, and the regulations are specific about the consequence of a failure by United to comply with notification requirements in its EOBs.  29 C.F.R. section 2560.503-1(1) provides:

"(l) <u>Failure to establish and follow reasonable claims procedures:</u>

In the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim."

67.   When a plan administrator fails to comply with certain administrative process regulations, "a claimant shall be deemed to have exhausted the administrative remedies under the plan," 29 C.F.R Section 2560.503-1; *Vaught v. Scottsdale Health Corp. Health Plan*, 546 F.3d 620, 626-27 (9th Cir. 2008).  Administrative process regulations establish a precursory duty in such a manner that a plan administrator's failure to comply with certain regulations provides claimants and their assignees (such as Brand) a free pass from any obligation to engage in or exhaust administrative review.  "[W]hen an employee benefits plan 'fails to establish or follow reasonable claims procedures consistent with the requirements of ERISA, a claimant need not exhaust because his claims will be deemed exhausted.'" *Barboza v. Cal. Ass'n of*

– 27 –

*Professional Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011) citing 29 C.F.R. Section 2560.503-1; *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1089 (9th Cir. 2012).

68.    Brand is not obligated to follow internal review procedures of the ERISA Plans at issue in this case, because United's denial letters in this case (the EOB's) "failed to cite specifically the pertinent plan provision on which the denial was based, as is required by 29 C.F.R. Section 2560.503-1 (f)(2)". *White v. Jacobs Eng'g Group Long Term disability Benefit Plan,* 896 F.2d 344, 349 (9th Cir. 1989). Furthermore, Brand is excused from obtaining internal review process as United's EOB's failed to provide a specific reason or reason for their benefit determination. *Lee v. Cal. Butcher's Pension Trust Fund*, 154 F.3d 1075, 1080 (9th Cir. 1998). "Conclusory statement which do not give reasons for denial do not satisfy the requirement for specificity" and therefore excuse a plaintiff from "obtain[ing] timely internal review". *Accord White,* 896 F.3d at 349.

69.    In the absence of a properly stated final determination in the pre-litigation claim review process, no statute of limitation ever began running with respect to the Brand claims *White, supra,* 896 F.2d at 351; *Bilyeu, supra,* 683 F.3d at 1089; *Chuck v. Hewlett Packard Co.,* 455 F.3d 1026 (9th Cir. 2006).

## **FIRST COUNT**

### **(Against United Defendants)**

### **Enforcement Under 29 U.S.C. Section 1132 (a)(1)(B) For Failure To Pay ERISA Plan Benefits And For Recovery Of Reasonable Attorney's Fees And Costs Under 29 U.S.C. Section 1132 (G)(1)**

70.    The allegations of the prior paragraphs (paragraphs 1 to 69) of this Complaint are hereby incorporated by reference in this First Count as if fully set forth at length.

COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)

71.     This cause of action is alleged by Plaintiff for relief in connection with claims for medical services rendered in connection with ERISA Plans administered and/or underwritten by United.

72.     Brand seeks to recover ERISA Plan benefits and enforce rights to benefits payment under 29 U.S.C. section 1132 (a)(1)(B); and under 29 U.S.C. section 1132 (g)(1) for recovery of reasonable attorney's fees and costs.  Brand has standing to pursue these claims as the assignee of member benefits.  As the assignee of benefits, Plaintiff is a "beneficiary" entitled to collect benefits and is the "claimant" for the purposes of the ERISA statute and regulations.  ERISA authorizes actions under 29 U.S.C. section 1132 (a)(1)(B) to be brought directly against United Defendants as the parties with actual control over the benefit and payment determinations with respect to Brand's claims.

73.     By reason of the foregoing, Brand is entitled to recover ERISA benefits for the services rendered to patients identified in Exhibit A due and owing in an amount to be proven at trial, and Brand seeks recovery of such benefits by way of the present action.

74.     29 U.S.C. Section 1132 (g)(1) authorizes the Court to allow recovery of reasonably attorney's fees and costs incurred in this action.  Brand has incurred, and continues to incur, attorney's fees and costs in its pursuit of benefits, and is entitled to recover its reasonable attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff prays for judgment against United Defendants as follows:

1. For damages against United Defendants in an amount to be proven at trial in connection with the healthcare benefits claim properly due and payable with respect to the services rendered to the Patients identified in Exhibit A hereto under the terms of the ERISA Plans at issue in this case.

**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**

2.  For interest at the applicable legal rate.

3.  For reasonable attorney's fees and costs in an amount to be proven at trial.

For such other relief as the Court may deem just and proper.

**Dated:** May 27, 2022                   Respectfully submitted,

                                          **WILLIAMS LAW FIRM PC**


                                          By:    /s/ Richard D. Williams

                                          Richard D. Williams,
                                          Attorneys for Brand Tarzana Surgical
                                          Institute, Inc.

– 30 –
**COMPLAINT FOR RECOVERY OF BENEFITS UNDER 29 U.S.C. § 1132 (A)(1)(B) AND
REASONABLE ATTORNEY'S FEES AND COSTS UNDER 29 U.S.C. § 1132 (G)(1)**